LANDRY, Judge.
Defendant (Bayou Marine) appeals from judgment in favor of plaintiff (Houma Towing) for the balance of rentals allegedly due on the tugboat, Miss Peggy, for 17% days at the rate of $240.00 daily. Defendant also appeals from judgment dismissing its third party demand against Cheramie Bros. Boat Company, Inc. for the difference between the rental charged on the Miss Peggy by plaintiff and the subcharter rate of $175.00 daily paid for use of the vessel by Cheramie. We affirm.
It is conceded that the vessel was leased to Bayou Marine initially for an hourly rate, which was changed by mutual agreement to the sum of $240.00 daily. Bayou Marine in turn subchartered to Cheramie for $250.00 daily (which included a $10.00 daily commission to Bayou Marine). In turn, Cheramie chartered to Skelly Oil Company (Skelly), the boat’s actual user. This controversy arises from the fact that Skelly refused to pay Cheramie more than $185.00 daily for the vessel’s use on the ground that it was not a 400 horsepower tug as represented by Cheramie. Consequently, Cheramie contends it owes Bayou Marine only the sum paid by Skelly.
Bayou Marine resists the claim of Hou-ma Towing on the ground that said owner agreed to payment for the boat’s hire on the basis of the rental received by Bayou Marine from Cheramie. Bayou Marine also contends Houma Towing agreed that Houma would be paid as Cheramie paid invoices received from Bayou Marine, therefore, no further payments are due plaintiff until Bayou Marine collects the difference from Cheramie.
It is conceded that Bayou Marine leased the Miss Peggy from August 7, through August 12, 1969, from August 15, to August 31, 1969, and from October 1, through October 18, 1969. Houma Towing acknowledges payment of all rentals due at the rate of $240.00 daily, save for 17% days commencing October 1, to October 18, 1969, or the sum of $4,200.00. In addition, Houma Towing claimed rental for other vessels bringing its total claim to $5,159.95, in which latter amount the trial court rendered judgment in favor of Houma Towing. Judgment was also rendered below in favor of Bayou Marine on its reconven-tional demand against Houma Towing in the sum of $1,157.60.
Cheramie resisted Bayou Marine’s third party demand on the ground that its lease from Bayou Marine was not for a specified price, but for such price as Cheramie could obtain from the intended user, Skelly Oil Company. Cheramie further asserts that Skelly refused to pay more than $175.-00 per day which was a fair rental for the Miss Peggy because the tug did not meet Skelly’s requirements for a 400 horsepower vessel, which need was made known to Cheramie when the vessel was leased.
The trial court rendered judgment in favor of Houma Towing upon finding that said plaintiff had no knowledge of what disposition Bayou Marine intended to make of the Miss Peggy, and also that Houma Towing did not agree it would be paid if and when Cheramie paid Bayou Marine’s invoices. In effect, the trial court held that the lease to Bayou Marine was for an unconditional charge of $240.00 per day so long as Bayou Marine retained the vessel.
In rejecting Bayou Marine’s third party demand against Cheramie, the trial court found that Bayou Marine failed to establish the vessel was less than 400 horsepower. The lower court also concluded there was no specific rate agreement between Bayou Marine and Cheramie, and that Bayou Marine agreed to Cheramie’s proposal to pay only $175.00 daily for the *224 vessel by accepting payments in said amount from Cheramie after the question of the vessel’s horsepower became an issue. Appellant’s sole complaint on appeal is that the trial court erred in dismissing its third party demand against Cheramie. More particularly, appellant argues the trial court erred in finding that there was no specific price arrangement between Bayou Marine and Cheramie, and that appellant acquiesced in the payment of a $175.00 daily rental from Cheramie.
The record contains ample evidence of the following pertinent facts: Bayou Marine has been in the boat brokerage business for some years, and frequently chartered vessels from plaintiff for recharter to third persons. It is customary in the trade to rent vessels by the hour when a charter is for one or two days only. If a charter is to last any appreciable time, a daily rate is customarily set to keep costs to the ultimate user within palatable limits. On or about August 5, 1969, Richard Na-quin, an employee of Bayou Marine, called Houma Towing and specifically requested to charter the Miss Peggy for what was thought to be a one or two day lease. A lease was agreed to at an hourly rate of $16.00. Naquin’s request was in response to a call from one Hugh Cheramie, who bore no relation to third party defendant, which said Hugh Cheramie desired a tug for his client, Skelly Oil Company (Skelly). The vessel was made available with a full crew and was retained by Skelly for some time. After four or five days, Edwin Chauvin, Manager, Houma Towing, became concerned by the prolonged charter on an hourly basis, and discussed the matter with E. J. Eusie of Bayou Marine. By mutual consent, the cost of the vessel was reduced to $240.00 per day from commencement of the charter.
Bayou Marine paid Houma Towing invoices for use of the Miss Peggy as follows: Invoice dated August 12, 1969, covering the period August 7 through 12, 1969, 6 days at $245.00 per day, $1,470.00; invoice dated September 2, 1969, for August 15 through September 2, 1969, 19 days at $240.00 daily, $4,560.00, and invoice dated September 30, 1969, for September 3 through 30, 1969, 28 days at $240.00, $6,720.00. All said invoices were paid January 31, 1970.
On August 21, 1969, Bayou Marine billed Cheramie for August 7-12, rental at $265.-00 daily, or $1,590.00. On August 25, Cheramie billed Skelly for said same period at $275.00 daily or $1,650.00, which was paid by Skelly that same date. On August 31, 1969, Bayou Marine billed Cheramie for August 15-31, at $250.00 daily, or $4,250.00. Cheramie’s employee, Lynnwood Terrebonne, changed the daily rate on this invoice to $175.00, and on September 10, 1969, billed Skelly for the same period at $185.00 daily, or $3,145.00, which Skelly paid to Cheramie apparently by check dated August 31, 1969. On September 30, 1969, Bayou Marine billed Cheramie for the period September 1 through September 30, 1969, at $250.00 daily, or $7,500.00, which invoice was also changed by Terrebonne to $175.00 daily, or $5,250.00. On October 8, 1969, Cheramie billed Skelly for said same period at $185.-00 daily, or $5,550.00. On October 22, 1969, Bayou Marine billed Cheramie for the period October 1 through 18, 1969, 17% days at $250.00 per day, or $4,375.00. Terrebonne changed this invoice to $175.00 daily, and on October 23, 1969, Cheramie billed Skelly for this same usage at the rate of $185.00 daily, or $3,330.00, which Skelly paid by check dated October 23, 1969. The three invoices from Bayou Marine to Cheramie were paid at the rate of $175.00 daily by a single check issued on an undisclosed date subsequent to October 22, 1969, the date of the last invoice.
About two weeks following the agreement between Houma Towing and Bayou Marine to fix the rental at $240.00 daily, Bayou Marine received a complaint from Cheramie to the effect that Skelly would not pay $240.00 per day for the boat because it was not a 400 horsepower vessel and was too light for the work Skelly had in mind. *225 It is uncontroverted that Bayou Marine's representative, E. J. Usie, contacted Edwin Chauvin of Houma Towing about the capacity of the tug, and was informed by Chauvin that the rate for the boat was $240.00 daily, and Chauvin also informed Usie that if Cheramie did not want to pay that amount to call the boat in. Bayou Marine has failed utterly to establish its defense to the main demand, namely, that plaintiff agreed to wait to collect its rental until Bayou Marine recovered from Chera-mie. Mr. Chauvin of Houma Towing emphatically denied such an agreement. Although Maurice Rome, President of Bayou Marine, contended on direct examination that such an agreement existed, we note that on cross examination, he conceded that there was no such formal agreement with Houma Towing, but that it was the company policy of Bayou Marine not to pay for charter boats until Bayou Marine was paid by its subcharterers. Insofar as concerns the dispute between Houma Towing and Bayou Marine, it suffices to say that regardless of the horsepower of the Miss Peggy, Bayou Marine is responsible to Houma Towing for rental at the rate of $240.00 daily. We so find because when the issue of horsepower arose, Chauvin made it clear to Bayou Marine’s employees that the rental was $240.00 daily, regardless of what anyone said concerning the size of the vessel. Bayou Marine’s subsequent retention of the vessel was with full knowledge of its owner’s terms.
Regarding the third party demand by Bayou Marine against Cheramie, the record shows that Cheramie's Lynnwood Terrebonne was contacted by Hugh Chera-mie who had a vessel working for Skelly. Hugh Cheramie’s vessel became disabled, and he wished a replacement to continue Skelly’s work. Terrebonne testified he was told by Hugh Cheramie that a 400 horsepower tug was needed. Terrebonne than contacted Bayou Marine and spoke with an employee whose name he could not recall, and was informed that the Miss Peggy was a 400 horsepower tug. He conceded that he had previously worked the Miss Peggy at a $250.00 daily rate. Terre-bonne acknowledged he made the initial charter for $16.00 per hour, which was changed to $240.00 daily, which lease ended August 17, 1969.
He also stated that when the first charter period of August 7-12 ended, Hugh Cheramie, who had no connection with Cheramie, made arrangements with Bayou Marine for the subsequent charter, and about one week after August 15, 1969, Cheramie began handling the invoices to Skelly as a broker. Terrebonne also stated that as to the second charter by Hugh Cheramie, no rate was agreed upon between Hugh Cheramie and Bayou Marine.
He also stated that some time after the boat was made available to Skelly, he learned from Skelly that the tug was less than 400 horsepower. He stated further that he called Bayou Marine, advised them that Skelly would not pay $240.00 for the boat, "and that he would get what he could. He also stated that the Bayou Marine representative told him they would get together on the matter and said nothing about calling the boat in. Terrebonne added he tried several times to get information from Bayou Marine about the rating of the tug, but was told Bayou Marine did not have the information. He also stated that he was unaware Bayou Marine was not the boat’s owner, and that he had previously leased the Miss Peggy at the rate of $240.-00 per day. He added that after Skelly complained, he billed the vessel to Skelly at $185.00 daily.
Richard Naquin, former employee of Bayou Marine, testified that Hugh Chera-mie called him and requested a 400 horsepower tug for use by Skelly. Naquin in turn called Houma Towing, requested a boat of that capacity, and was told the Miss Peggy was available. He did not discuss with Hugh Cheramie how the vessel would be paid for. He assumed the boat was rented for a short term, and the rate would be by the hour. He also stated that about three weeks after the boat was rent *226 ed, a call came in regarding its horsepower. Naquin also testified that he had rented the Miss Peggy on numerous previous occasions as a 400 horsepower tug.
Bayou Marine’s former employee, E. J. Usie, confirmed Naquin’s call from Hugh Cheramie for a tug, and also recalled Naquin’s calling Houma Towing. He also stated that about a week later, the rate was changed by Edwin Chauvin from an hourly charge- to one of $240.00 daily. This information was conveyed to Terrebonne, who agreed to the rate and said nothing about the horsepower of the vessel. The vessel continued to be worked by Skelly, and the matter of horsepower came up later. When the issue arose, Usie called Chauvin and told him that Skelly would only pay $185.00 daily for the boat, but Chauvin stated he wanted $240.00 per day or the boat returned. -Usie said he told Chauvin he would call Terrebonne and ask Terre-bonne to contact Skelly and see what Skelly would pay. He stated further that he called Terrebonne and informed him that Chauvin would not take less than $240.00. When so informed, Terrebonne did not agree to any specific price, but said he would contact Skelly and try to get Skelly to pay more. However, Usie never heard anything further from anyone at Cheramie, and Cheramie kept the boat another 15 days or so.
We concur in the trial court’s finding that Bayou Marine failed to establish that the vessel in question was less than 400 horsepower. Bayou Marine’s own employee, Naquin, stated the vessel was rated as a 400 horsepower tug, and also explained that engine horsepower can be rated either as engine horsepower or shaft horsepower, and that there is a difference between the two. In addition, Terrebonne testified that he had frequently chartered the Miss Peggy which was carried on lists made available to boat charterers as a 400 horsepower vessel. In addition, Chauvin testified the tug was a 400 horsepower vessel. Although there was some testimony to the contrary, we find the preponderance of evidence supports the conclusion the Miss Peggy was a 400 horsepower tug.
In essence, the trial court found that as to the rental commencing August 15, 1969, there was no agreement between Bayou Marine and Cheramie as to price. In effect, the lower court also held that when the dispute as to vessel capacity was raised by Skelly, it was incumbent upon Bayou Marine to establish a firm price with Cher-amie or demand the return of the tug, as did Houma Towing, since Bayou Marine was aware Houma Towing demanded $240.00 per day for the use of its vessel. Instead, Bayou Marine permitted Skelly to continue using the tug on Cheramie’s representation that it would get what it could from Skelly. In so doing, Bayou Marine ran the risk of paying the difference, if any. Under the circumstances of this case, we find no error, certainly not manifest error, in such a conclusion.
The judgment of the trial court is affirmed at appellant’s cost.
Affirmed.